GEORGE WHITNEY ADAMS ET AL., APPELLEES, v. R. V. MCGREW, APPELLANT.

FILED FEBRUARY 5, 1917. No. 19109.

1. **Fraud:** IMPUTED NOTICE. Although the defendant may have had no direct actual knowledge of the fraud and misrepresentation of a third party who procures an exchange of valuable land for worthless corporation stock of the defendant, still the law may impute such notice to him from circumstances strongly indicating it, if he received title to the land and disposed of it for his own profit.

2. ———: ———. In such case, if it clearly appears that false representations were made inducing the exchange, and the circumstances are such that the law will impute to defendant notice of that fact, he will be liable to plaintiff for the value of the land so obtained, and the jury should be so instructed.

3. **Appeal:** IMMATERIAL ERRORS. If under the competent evidence the only question for the jury is the value of the land, errors of the trial upon other issues become immaterial.

4. ———: REMITTITUR. And in such case, if the amount of the verdict and judgment is clearly more than the evidence warrants, a remittitur will be required as a condition of affirmance.

APPEAL from the district court for Franklin county: HARRY S. DUNGAN, JUDGE. *Affirmed on condition.*

*W. C. Dorsey* and *A. H. Byrum,* for appellant.

*W. H. Miller, George S. Redd* and *George A. Adams, contra.*

SEDGWICK, J.

The plaintiffs brought this action in the district court for Franklin county to recover damages against the defendant for fraud and deceit in an exchange of corporation stock of the defendant to the plaintiffs for an equity in a piece of land in Colorado. There was a verdict and judgment for the plaintiffs, and the defendant has appealed.

The defendant had 200 shares of the capital stock of the National Realty Company, a Colorado corporation. The plaintiffs, through one Maloney, exchanged their equity in 120 acres of land for this stock. The evidence shows that Maloney misrepresented the value of the stock, and it also shows that the corporation was fraudulent and that the stock was entirely worthless. In January, 1911, the defendant purchased some of this stock and paid $1,000 therefor. He then became vice-president of the corporation and remained connected with the corporation in that capacity for perhaps ten weeks. He then resigned his office in the corporation and ceased any active management or participation in the business. Shortly afterwards Mr. Maloney asked the defendant if he still had the stock in the corporation and if he wanted to sell or trade it. The defendant told Maloney that he still had the stock and would trade it. It appears that these plaintiffs had employed Maloney as their agent to dispose of their equity in the land in question by sale or trade, and Maloney induced the plaintiffs to execute a contract of exchange of their interest in the land for the stock in question. He then presented the contract to the defendant, who also signed it. The principal question in the trial was whether the defendant was responsible for the misrepresentations of Maloney and of the parties to whom Maloney sent the plaintiffs for information in regard to the value of the stock. The defendant was a witness in his own behalf and his testimony seems to be straightforward and reliable. He made no attempt to deny his former relations with the company. He knew that the corporation was fraudulent and insolvent, and that the stock was entirely worthless. From his testimony it would appear that he was swindled when he obtained the stock, and that he must have known that Maloney contemplated a swindle when he disposed of it; and, while we must believe from this evidence that the defendant had no direct actual knowledge of the particular misrepresenta-

tions that Maloney and others made to the plaintiffs, yet there are many circumstances in the evidence of the defendant himself, as well as other witnesses, from which the law will impute notice to the defendant that Maloney was using improper methods to dispose of the stock. The evidence is so strong upon this point that a finding to the contrary could not be supported. Under this evidence the court would have been justified in submitting to the jury the one question as to the value of the property that the defendant received in exchange for the stock. It is therefore unnecessary to consider alleged errors of the court in the trial of other issues.

The important question in the case then is whether the evidence will support so large a verdict and judgment. The defendant took the title subject to a mortgage for $4,450, upon which there had accumulated at least $100 interest and taxes. This interest and taxes the defendant paid. The evidence was conflicting, but not very satisfactory, as to the value of the land. There is no evidence of disinterested witnesses as to its value. We have only the evidence of one of the plaintiffs and the evidence of the defendant. Neither shows any special knowledge as to value. Taking their evidence together, and considering that the burden of proof was upon the plaintiffs to show affirmatively the value of the property they parted with, it cannot be said that this evidence proves the land was worth more than $7,500. If we deduct the incumbrances, $4,550, the most that the evidence will warrant as a judgment against the defendant would be $2,950. The verdict was $5,866.25, which exceeded the value of the interest conveyed to the defendant by at least $2,916.25. If the plaintiff enters a remittitur of $2,916.25 within 30 days, the judgment of the district court will be affirmed; otherwise it will be reversed. Costs in this court will be taxed against the plaintiffs.

AFFIRMED ON CONDITION.

LETTON, J., not sitting.